## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMERICAN FEDERATION OF STATE    )
COUNTY AND MUNICIPAL    )
EMPLOYEES, DISTRICT COUNCIL 47    )
HEALTH AND WELFARE FUND, et al.    )
    )        **CIVIL ACTION**
    )        **No. 08-cv-5904**
          **Plaintiffs**,    )
    )
          v.    )
    )
ORTHO-MCNEIL-JANSSEN    )
PHARMACEUTICALS, INC., et al.    )
    )
          **Defendants**.    )

---

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                **March 11, 2010**

Plaintiff American Federation of State, County and Municipal Employees, District Council 47 Health and Welfare Funds, and Philadelphia Firefighters Union Local No. 22 Health and Welfare Fund bring this action against Defendants Ortho-McNeil-Jannsen Pharmaceuticals, Inc. ("OMJ"), Sandoz, Inc., and ALZA Corporation ("ALZA"), alleging violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), breach of express and implied warranties, and unjust enrichment. Before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint.[1] For the reasons set forth below, the Motion will be granted in part and denied in part.

---

[1]       Document No. 14.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Defendants OMJ and Sandoz, Inc. market and distribute the fentanyl transdermal system patch ("fentanyl patch"), which is a Schedule II narcotic, available only through a doctor's prescription, designed to deliver a steady, controlled dosage of a powerful medication that provides relief for severe and chronic pain.[2] ALZA, an affiliate of OMJ, contracted with OMJ and Sandoz to manufacture and supply fentanyl patches throughout the United States.[3] OMJ distributes the patches under the brand name Duragesic and Sandoz distributes the patches under a generic equivalent.[4] The fentanyl patches are available in a variety of dosage delivery rates (e.g., 12.5, 25, 50, 75 and 100 micrograms per hour ("mcg/hour")).[5]

On February 12, 2008, OMJ announced a recall of all 25 mcg/hour Duragesic patches (and its generic equivalent) stamped with expiration dates on or before December 2009.[6] The official press release stated, in pertinent part, that:

> [The 25mcg/hr fentanyl transdermal system patches] being recalled may have a cut along one side of the drug reservoir within the patch. The result is possible release of fentanyl gel from the gel reservoir into the pouch in which the patch is packaged, exposing patients or caregivers directly to fentanyl gel. Fentanyl patches that are cut or damaged in any way should not be used. Exposure to fentanyl gel may lead to serious adverse events, including respiratory depression and possible overdose, which may be fatal....Anyone who has 25 mcg/hr...fentanyl patches should check the box or foil pouch for the expiration date... The recalled patches all have expiration dates on or before December 2009. The cut edge in affected patches can be seen

---

[2]       Compl. [Document No. 1] ¶¶ 6-7, 16.

[3]       Id. ¶ 8.

[4]       Id.

[5]       Id.

[6]       Id. ¶ 19.

upon opening the sealed foil pouch that holds the patch. Affected patches should not be handled directly.[7]

Plaintiffs are health and welfare trust funds that provide medical coverage, including prescription drug coverage, to their members and their members' dependents.[8] Plaintiffs and other similarly situated third-party payors have paid for supplies of 25 mcg/hour fentanyl patches, which were later recalled by Defendants, on behalf of their qualified members.[9] As a result of the recall, Plaintiffs allege that they, and similarly situated third-party payors, paid or will pay expenses related to the purchase and reimbursement of 25 mcg/hour fentanyl patches that had to be discarded.[10]

On December 19, 2008, Plaintiffs filed the underlying class-action Complaint, alleging the following: COUNT I: Violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); COUNT II: Breach of an Express Warranty under the Pennsylvania Uniform Commercial Code ("UCC"); COUNT III: Breach of an Implied Warranty; and COUNT IV: Rescission / Unjust Enrichment. On March 25, 2009, Defendants filed the instant Motion to Dismiss, asserting several grounds for dismissal of Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court has carefully reviewed Defendants' Motion, Plaintiffs' Response,[11] Defendants' Reply,[12] and all accompanying materials, and this matter is now ready for disposition.

---

[7]     Defs.'Mot. to Dismiss, Ex. A; see also Compl. ¶ 20.

[8]     Compl.¶¶ 1-2.

[9]     Id. ¶ 21.

[10]    Id. ¶ 23.

[11]    Document No. 15.

[12]    Document No. 19.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of any claim wherein the district court lacks subject matter jurisdiction.[13]  When considering a 12(b)(1) motion, the court "review[s] only whether the allegations on the face of the complaint, taken as true, allege sufficient facts to invoke the jurisdiction of the district court."[14]  When subject matter jurisdiction is challenged under 12(b)(1), the plaintiff must bear the burden of persuasion.[15]

In order for a plaintiff to have standing in federal court, the case or controversy presented by the plaintiff must be justiciable and establish an injury-in-fact.[16]  To establish an injury-in-fact, a plaintiff must allege that: (1) defendant violated a legally protected interest that is concrete and particularized, and actual or imminent – not merely an injury that is "conjectural" or "hypothetical," (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is redressable by a remedy that federal courts are permitted to give.[17]  If the complaint fails to satisfy these requirements, "a federal court does not have subject matter jurisdiction...[and] the claim[s] must be dismissed."[18]

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal for failure to state a claim upon which relief can be granted.[19]  Under 12(b)(6), the moving party "bears the

---

[13]   FED. R. CIV. P. 12(b)(1) (West 2009 Revised).

[14]   Licata v. U.S. Postal Serv., 33 F.3d 259, 260 (3d Cir. 1994).

[15]   Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

[16]   See Flast v. Cohen, 392 U.S. 83, 95 (1968).

[17]   See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

[18]   Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006).

[19]   FED. R. CIV. P. 12(b)(6) (West 2009 Revised).

burden of showing no claim has been stated."[20] The court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in a light most favorable to the non-moving party."[21] The United States Supreme Court clarified this standard in Bell Atlantic Corporation v. Twombly, explaining that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[22] Instead, a plaintiff must allege facts that "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[23]

## III. DISCUSSION

### A. FRCP 12(b)(1)

Relying upon FRCP12(b)(1), Defendants assert that the Court lacks subject matter jurisdiction because Plaintiffs allegedly (1) failed to plead an injury-in-fact sufficient to satisfy Article III standing; (2) lack standing as a "person" under the UTPCPL; and (3) do not fall within the class of buyers or end-users that may recover for a breach of warranty under the Pennsylvania UCC. The Court will address each argument separately below.

### (i) Injury-In-Fact

Defendants argue that Plaintiffs' Complaint failed to allege that any of their members actually purchased defective fentanyl patches. Defendants assert that unless Plaintiffs pled that

---

[20]    Kehr Packages, 926 F.2d at 1409.

[21]    Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).

[22]    550 U.S. 544, 555 (2007) (citations omitted).

[23]    Id. (citations omitted).

their members received patches that were actually defective, Plaintiffs' alleged injury is merely conjectural and hypothetical. Defendants further assert that "[p]ayment for a product that is recalled as a precautionary measure because it might have a defect is not the legal equivalent of payment for a product that actually is defective."[24] In effect, Defendants' arguments attempt to distinguish between patches that were actually defective (*e.g.*, patches that contained a cut on the gel reservoir) and patches that were subject to Defendants' product recall. The Court finds, however, that Defendants' recall notice made no such distinction. The recall notice warned that "[f]entanyl patches that are cut or damaged in any way should not be used," and that "[e]xposure to fentanyl gel may lead to serious adverse events, including respiratory depression and possible overdose, which may be fatal."[25] Plaintiffs pled that as a result of this warning and product recall, they "have paid or will pay expenses related to the purchase of and reimbursement for supplies of 25 mcg/hour fentanyl patches [previously purchased for their members, bearing the relevant expiration dates] that were unusable, worthless, and had to be discarded."[26] These facts, if accepted as true, plead an economic loss that is concrete, particular, and traceable to a defect resulting from Defendants' manufacturing and distribution process, and would permit a remedy if Plaintiffs are successful on the merits.

Additionally, Plaintiffs' claim, as pled, seeks monetary damages for the purchase price of the recalled fentanyl patches, an injury that directly impacts Plaintiffs, not just the consequential damages that their members may incur from exposure to the defective patches.[27] Claims for

---

[24]     Defs.' Mot. at 8.

[25]     Defs.'Mot., Ex. A; see also Compl. ¶ 20.

[26]     Compl. ¶¶ 21, 23.

[27]     Compl. at 13-14; see also Pls.' Answer to Defs.' Mot. to Dismiss at 5.

monetary damages generally satisfy the injury-in-fact threshold.[28]  Based on the allegations pled

in the Complaint, the Court finds that Plaintiffs have satisfied the injury-in-fact requirements

necessary to establish Article III standing.

### (ii) Standing Under the UTPCPL

Defendants argue, in the alternative, that Plaintiffs are not "persons" under the UTPCPL,

and therefore do not have standing to sue, because "[t]hey do not themselves obtain or consume

the fentanyl patches in question" nor were their purchases made for primarily "personal, family,

or household purposes."[29]  Pennsylvania courts, however, have long recognized the ability of

third-party trusts and associations to assert UTPCPL claims on behalf of their constituent

members based on the statute's broad definition of "person."[30]  Section 201-9.2(a) of the

UTPCPL permits a private action for the recovery of damages for "[a]ny person who purchases

or leases goods or services primarily for personal, family or household purposes and thereby

suffers any ascertainable loss of money . . . as a result of . . . [any] act or practice declared

unlawful by this act . . . ."[31]  The UTPCPL defines "person" as "natural persons, corporations,

trusts, partnerships, incorporated or unincorporated associations, and any other legal entities."[32]

In addition, the "purpose" requirement of § 201-9.2(a) focuses on whether the final consumer

---

[28]     See Danvers Motor Co. v. Ford Motor Co., 432 F.3d 286, 293 (3d Cir. 2005).

[29]     Defs.' Mot. at 10-11.

[30]     See Commonwealth v. TAP Pharmaceutical Products, Inc., 885 A.2d 1127, 1142-1143 (Pa. Commw. 2005) (definition of "person" under § 9.2(a) includes third-party medical benefit payors); See also Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, Inc., 574 A.2d 641, 644-645 (Pa. Super. 1990) ("associations" were explicitly included within the definition of "person" under § 202-2(2) and that even though the breach of warranty claim for defective roofing membranes affected the individual unit owners the association represented, the condominium association could assert a claim as a "person" under § 9.2(a)).

[31]     73 PA. STAT. § 201-9.2(a) (2010 Electronic Update).

[32]     Id. § 201-2(2).

uses the product for personal, family or household use, not whether the third-party entity

personally uses the product or merely purchases it.[33]

Defendants, nonetheless, rely on Balderston v. Medtronic Sofamor Danek, Inc. to support

their position.[34]  In Balderston, the plaintiff-physician filed suit against a manufacturer of

surgical screws, which were used on his patients during spinal fusion operations, claiming that

the defendant misrepresented the FDA's approval status of the screws.  The plaintiff claimed that

he had been misled as to the FDA's approval status, and was subsequently exposed to lawsuits.

The district court, however, determined that the plaintiff's patients, not the plaintiff, had actually

purchased the screws and therefore concluded that the plaintiff lacked standing.  The district

court further concluded that plaintiff could not qualify as a purchaser because any purchase he

would have made was for business purposes, not for "personal, family, or household" use.[35]  On

appeal, the Third Circuit affirmed the district court's findings and noted that plaintiff

unequivocally acknowledged that "purchase [of the surgical screw was] by the consumer, the

patient...[and that] neither plaintiff nor his practice [were] ever billed for the screw and [did] not

pay for it."[36]

The distinctions between the facts in Balderston and the facts as pled before this Court are

clear.  Whereas in Balderston, the plaintiff could in no way be considered a purchaser or even

consumer of the goods at issue, Plaintiffs here actually paid for the fentanyl patches *on behalf* of

---

[33]     See TAP Pharm. Prods., 885 A.2d at 1142-1143; See also Valley Forge Towers, 574 A.2d at 649.

[34]     285 F.3d 238 (3d Cir. 2002)(a surgeon filed a UTPCPL claim against the manufacturer of pedicle screws, which were used on his patients during various surgical procedures.  The Third Circuit held the surgeon did not qualify as a "person" under the UTPCPL because his patients actually purchased the screws, and even if he had directly purchased the screws, the court reasoned that he purchased them primarily for business purposes).

[35]     Id. at 240.

[36]     Id. at 241.

their members for their members' personal, family or household use.[37] This places Plaintiffs in a far different relationship with Defendants that the distant or tangential relationship between the plaintiff and the defendant in Balderston. The facts here compel the conclusion that Plaintiffs allegations, as pled in the Complaint, strongly support the position that they have standing as purchasers under the UTPCPL. The Court finds that since Plaintiffs purchased the fentanyl patches on behalf of their members in their representative capacity, and those patches were purchased for the personal, family and household use of their members, Plaintiffs have properly asserted a claim under the UTPCPL.[38]

### (iii)    Buyers Under Pennsylvania's UCC

As a third alternative argument for dismissal under FRCP 12(b)(1), Defendants assert that because "plaintiffs merely pay or reimburse some or all of the purchase price of the covered prescription medicines that their members buy and use," Plaintiffs, as third-party payors, do not qualify as "buyers" under Pennsylvania's UCC.[39] Defendants' argument, however, essentially takes a section of the UCC that *extends* warranty protections to relatives and persons in the same household as the buyer, and incorrectly suggests to this section somehow *limits* buyers to only "natural persons."

Section 2103(a) of the UCC defines "buyer" as a "person who buys or contracts to buy goods."[40] Section 1201(b)(27) of the UCC defines "person" as "[a]ny individual; corporation;

---

[37]    See Compl. ¶¶ 26, 35.

[38]    See TAP Pharm. Products, 885 A.2d at 1142-1143 (distinguishing Balderston from the Commonwealth's third-party payor programs); See also Valley Forge Towers, 574 A.2d at 649.

[39]    Defs. Mot. at 14-15.

[40]    13 PA. CONS. STAT. § 2103(a) (2010 Electronic Update).

business trust; estate; trust; partnership; limited liability company; association; joint venture; government; governmental subdivision, agency or instrumentality, public corporation or other legal or commercial entity."[41]  Contrary to Defendants' arguments, the definition of "person" under the UCC is not limited to a "natural person;" rather, the UCC uses a very broad definition, which includes corporations, trusts and business trusts.  Therefore, the Court finds that Plaintiffs are in fact considered both "persons" and "buyers" under the UCC.  Accordingly, each of Defendants' arguments offered to support its motion to dismiss the Complaint for a lack of subject matter jurisdiction are denied.

### B.      FRCP 12(b)(6)

Relying upon FRCP12(b)(6), Defendants assert that the Court should dismiss Plaintiffs' Complaint because Plaintiffs failed to state a claim for which relief can be granted by not pleading that: (1) Defendants committed unfair or deceptive acts or practices under the UTPCPL; (2) Plaintiffs provided Defendants reasonable notification of the alleged breach of warranty as required by Title 13 of the Pennsylvania Consolidated Statutes, Section 2607(c)(1); (3) a warranty was actually breached; (4) an express warranty extended to them as third-party medical benefit payors; and (5) Defendants actually received a benefit as required for a claim of unjust enrichment.  The Court will address each argument separately below.

#### (i)      The UTPCPL

Defendants argue that Plaintiffs' UTPCPL claims should be dismissed for failure to state a claim upon which relief can be granted because Plaintiffs failed to: (1) identify, with particularity, a false or deceptive representation made by Defendants that was material to

---

[41]      Id. § 1201(b)(27).

Plaintiffs' coverage decisions and (2) plead justifiable reliance on Defendants' alleged

representations.  In support of their first point, Defendants assert that in order for Plaintiffs to

plead an unfair or deceptive act or practice under the UTPCPL, Plaintiffs must allege that the

"defendants made a representation that their patches would invariably be free from defects."[42]

The UTPCPL, however, defines unfair or deceptive acts or practices to include representations

that "goods . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, or

quantities that they do not have," or representations "that goods . . . are of a particular standard,

quality, or grade . . . , if they are of another."[43]  Under both definitions, Plaintiffs allegations in

the complaint, if taken as true, sufficiently plead an unfair or deceptive act committed by

Defendants.  The "unfair and deceptive" act alleged in Plaintiffs' Complaint is Defendants'

representation that the recalled fentanyl patches would release the drug at a safe dosage rate.

However, due to the defect and subsequent recall, the fentanyl patches could actually release the

drug at a significantly higher and more dangerous dosage rate, which rendered the patches

useless to Plaintiffs.

As to their second point, Defendants assert that any alleged reliance by Plaintiffs that the

fentanyl patches would be completely free from cuts or damage is not "justifiable," especially

given that the fentanyl patches packaging included an insert disclaimer, which warned that

broken or cut patches could lead to overdose or death.[44]  Plaintiffs argue in opposition that the

Complaint sufficiently pleads "the type of representations that fall into the traditional scope of

---

[42]     Defs.' Mot. at 12.

[43]     73 PA. STAT. § 201-2(4)(v), (vii).

[44]     Defs.' Mot. at 13.

consumer protection statutes – where a product seller promises one thing but delivers another."[45] Plaintiffs assert in the Complaint that Defendants represented to end-users, physicians and third-party payors that the fentanyl patches were designed to safely release the prescription drug at a rate of 25 mcg/hour. However, because of the manufacturing defect, the patches potentially released the drug at an excessive, possibly fatal, rate. Accordingly, the Court finds that Plaintiffs sufficiently alleged that Defendants committed unfair or deceptive acts or practices under the UTPCPL and Plaintiffs sufficiently pled justifiable reliance on the alleged unfair or deceptive acts in their Complaint.

### (ii) Breach of Implied and Express Warranty Under Pennsylvania UCC

Defendants argue that Plaintiffs' breach of express and implied warranty claims should be dismissed for failure to state a claim upon which relief can be granted because Plaintiffs failed to allege in their Complaint that they notified Defendants of the breach of warranty. Under § 2607(c)(1) of the UCC, a buyer must "within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."[46] Defendants argue that "[t]he purpose of the notice requirement is to afford the seller a reasonable time within which to cure the breach or settle the claim."[47] Plaintiffs argue in opposition that Defendants cannot complain of a lack of notice for the breach of warranty, as it was Defendants themselves who first gave notice to the purchasers that the fentanyl patches were defective

---

[45]     Pls.' Answer at 11.

[46]     13 PA. CONS. STAT. § 2607(c)(1).

[47]     Defs.' Mot. at 16.

through the recall notice. According to Plaintiffs, "Defendants were already well aware of the breach and had an opportunity to make good."[48]

Plaintiffs' argument, however, that notification under § 2607(c) is unnecessary because Defendants had actual or constructive knowledge of the breach, is not supported by the language of the UCC, its statutory purpose, or existing case law interpreting § 2607. Plaintiffs appear to confuse the term "notice" with "notify" – which the UCC explicitly distinguishes. Under UCC § 1202(a), a person has *notice* of a fact when the person has actual knowledge of it, has received notification of it, or, from all of the facts and circumstances known to that person at the time in question, has reason to know it exists.[49] On the other hand, § 1202(d) defines *notify* to mean "give a notice or notification to another person by taking such steps as may be reasonably required to inform the other person in ordinary course, whether or not the other person actually comes to know of it."[50]

The purpose of notification under § 2607(c)(1) is not intended to merely make the seller aware of the breach; rather, the notification must "inform[] the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation."[51] Thus, the purpose of notification under § 2607(c) is to allow the seller an opportunity to resolve the dispute regarding an alleged breach before the buyer initiates a lawsuit. Therefore, even assuming that Defendants were aware that the fentanyl patches were defective, Defendants may not have been aware of Plaintiffs' intent to file a class action lawsuit,

---

[48]     Pls.' Answer at 14.

[49]     13 PA. CONS. STAT. § 1202(a).

[50]     Id. § 1202(d).

[51]     Id. § 2607 cmt. 4; see also Beneficial Comm. Corp. v. Brueck, 23 Pa. D. & C.3d 34, 37 (Pa. Ct. Comm. Pl. 1982)("Section 2607(c)'s requirement that the buyer notify the seller of the breach within a reasonable time after he discovers or should have discovered the breach gives the manufacturer the opportunity to cure the defect, settle the claim through negotiation, and gather information that may assist in defending the claim.").

and were denied the opportunity to negotiate or settle this claim without judicial involvement. To "notify" under the UCC requires the affirmative act of notification, and Section 2607(c)(1) explicitly requires the buyer to "notify the seller of breach or be barred from any remedy."[52] Plaintiffs' "constructive notice" argument does not address whether Plaintiffs ever actually and affirmatively notified Defendants of the breach, as required by § 2607(c)(1), prior to initiating this litigation.

Additionally, the Third Circuit recently analyzed § 2607(c) of the UCC in Vanalt Electrical Construction, Inc. v. Selco Manufacturing Corporation, and concluded that a "review of Pennsylvania precedent and other authorities interpreting the UCC indicates that the Pennsylvania Supreme Court would agree that a buyer must prove compliance with Section 2607 before recovering for a breach of contract or warranty involving nonconforming goods . . . ."[53] Here, the Court must also treat the § 2607(c) reasonable notification requirement as a condition precedent to recovery, with Plaintiffs bearing the burden to prove that reasonable notification was given. As reasonable notification is a material element necessary to sustain recovery of a UCC breach of warranty claim, Plaintiffs were required to affirmatively allege that they reasonably notified Defendants.[54] Inasmuch as § 2607(c) bars a buyer's recovery absent the buyer providing reasonable notification of the breach, it follows that a buyer must also plead, at a minimum, in its Complaint, that it provided reasonable notification in order to state a viable

---

[52]       Id. § 2607(c)(1).

[53]       233 Fed. Appx. 105, 111 (3d Cir. 2007)(held in a dispute over the sale of goods, the buyer must prove compliance with the notice requirement of Section 2607" and that "reasonable notification is a precondition to the buyer's recovery for breach", with the buyer bearing the burden to prove its requirements).

[54]       See Vanalt, 233 Fed. Appx. at 111; See also Twombly, 550 U.S. at 562 (quoting Car Carriers v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984) (a complaint "'must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory'").

claim for recovery.[55]  Plaintiffs were not required to allege in the Complaint that the notification

occurred in any substantial form (such as a letter or a formal demand), as the "reasonableness" of

the notice is a factual matter left for the jury to resolve.  However, Plaintiffs needed to allege, at

a minimum, that they notified Defendants in some manner "or be barred from any remedy."[56]

The Court finds that Plaintiffs failed to allege that they provided Defendants with notification as

required by §2607(c)(1) of the UCC.  As such, the Court further finds that Plaintiffs' breach of

express and implied warranty claims should be dismissed under FRCP 12(b)(6).

### (iii)    Unjust Enrichment

Defendants also argue that Plaintiffs' unjust enrichment claim should be dismissed for

failure to state a claim upon which relief can be granted.  To satisfy the pleading requirements of

unjust enrichment, the plaintiff must allege the following elements in its complaint: (1) a benefit

conferred upon one party by another, (2) appreciation of the benefit by the recipient, and (3)

acceptance and retention of the benefit under circumstances that would make it inequitable or

unjust for the recipient to retain the benefit without payment of value.[57]

Defendants offer two distinct arguments to defeat Plaintiffs' unjust enrichment claim.

First Defendants assert that when an unjust enrichment claim is based upon tortious conduct, and

the court dismisses the tort claims based upon the same conduct, the court must also dismiss the

unjust enrichment claim as it "is essentially another way of stating a traditional tort claim."[58]

---

[55]     Section 2607(c)(1) requires the buyer to "within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any recovery."  13 PA. CONS. STAT. § 2607(c)(1).

[56]     See Id.; see also Vanalt, 233 Fed. Appx. at 112.

[57]     Allegheny Gen. Hosp. v. Phillip Morris, Inc., 228 F. 3d 429, 447 (3d Cir. 2000).

[58]     Defs.' Mot. at 19.

The Court finds, however, that this argument is inconsequential and cannot constitute a basis for dismissal in this instance because the Court does not dismiss Plaintiffs' UTPCPL claim.

Second, Defendants assert that Plaintiffs, as third-party payors obligated to reimburse their members' prescription drug expenses, did not confer a "benefit" to Defendants in any way recognized under the law and that "any 'benefit' inured to [D]efendants was merely 'incidental' to [P]laintiffs' performance of their independent contractual obligations."[59] To support this argument, Defendants rely on Allegheny General Hospital v. Phillip Morris, Inc.[60] The facts of Allegheny General, however, are distinguishable: Allegheny General involved a hospital's expenses to treat tobacco-related illnesses caused by the patient's prolonged tobacco use. The hospital and tobacco companies had no preexisting relationship, and the hospital did not directly pay the tobacco companies for any products or services. Under such circumstances, the Third Circuit found that the benefit conferred to the tobacco companies was too incidental or remote to establish a claim of unjust enrichment.[61] Here, however, as pled in the Complaint, Plaintiffs directly paid for or reimbursed the purchase costs of fentanyl patches on behalf their members. The benefit in this case is not remote or incidental; rather, the benefit (the amount paid by Plaintiffs to Defendants for defective fentanyl patches) is direct and measurable.

Plaintiffs' Complaint alleges that Defendants "reaped substantial profits from the sale of defective fentanyl patches," and that "Defendants' profits would have been reduced, but for their wrongful and unlawful conduct."[62] Otherwise stated, Plaintiffs pled that they conferred a

---

[59]     Id. at 20.

[60]     228 F. 3d at 434, 446-448. (held a hospital's claim of unjust enrichment filed against certain tobacco companies was based on remote and indirect injuries, consequently the tobacco companies had no legal obligation to pay the non-paying patients' medical expenses, and whatever "incidental benefit" the tobacco companies received was insufficient to establish a claim of unjust enrichment).

[61]     Id.

[62]     Compl. ¶ 49.

monetary benefit to Defendants, that Defendants appreciated the benefit, and that the Defendants retained the benefit under inequitable circumstances. The Court finds that these factual allegations, if taken as true, sufficiently plead a claim of unjust enrichment. Accordingly, Defendants' arguments offered to support its motion to dismiss the Complaint for failure to state a claim upon which relief can be granted are denied as to Plaintiffs' unjust enrichment and UTPCPL claims and granted as to Plaintiffs' breach of express and implied warranty claims.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Counts II and III for Plaintiffs' failure to plead reasonable notification as required by 13 Pa. Cons. Stat. § 2607(c) is hereby granted. Defendants' remaining general and specific grounds for dismissal under FRCP 12(b)(1) and 12(b)(6), particularly as to Counts I and IV, are hereby denied.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMERICAN FEDERATION OF STATE )
COUNTY AND MUNICIPAL )
EMPLOYEES, DISTRICT COUNCIL 47 )
HEALTH AND WELFARE FUND, et al. )
                   )
            **Plaintiff**, )
                   )
            v. )
                   )
ORTHO-MCNEIL-JANSSEN )
PHARMACEUTICALS, INC., et al. )
                   )
            **Defendants**. )

CIVIL ACTION
No. 08-cv-5904

---

## ORDER

**AND NOW**, this 11th day of March 2010, upon consideration of Defendants' Motion to Dismiss [docket entry No. 14]; Plaintiffs' Answer to Defendants' Motion to Dismiss [docket entry Nos. 15 and 16]; and Defendants' Reply [docket entry No. 19], and for the reasons set forth in the attached Memorandum Opinion, it is hereby **ORDERED** that Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**. Defendants' Motion to Dismiss Plaintiffs' **COUNTS I** and **IV** is **DENIED**. Defendants' Motion to Dismiss Plaintiffs' **COUNTS II** and **III** is **GRANTED**. **Counts II and III** are hereby **DISMISSED**.

It is so **ORDERED**.

                                 **BY THE COURT:**

                                 **/s/ Cynthia M. Rufe**
                                 **CYNTHIA M. RUFE, J.**