UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, DISTRICT COUNCIL 47 HEALTH AND WELFARE FUND, *et al.* <br><br> Plaintiff, <br><br> v. <br><br> ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC., *et al.* <br><br> Defendants. | CIVIL ACTION <br> No. 08-cv-5904 |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                                                                            December 21, 2010

Before the Court are Defendants' Motions to Compel Plaintiffs to Produce Documents to Defendants' First Set of Requests for Production and to Provide Complete Answers to Defendants' First Set of Interrogatories ("Motion to Compel") [doc. no. 40] and to Extend Deadlines [doc. no. 41]. For the reasons that follow, Defendants' Motions to Compel and Extend are denied in part and granted in part**.**

**I.  Factual and Procedural Background**

The facts and posture of this case are well-known to the Parties, so the Court provides only a brief recitation of the pertinent details. In December 2008, the Health and Welfare Funds of two local unions—AFSCME District Council 47 ("AFSCME") and Philadelphia Firefighters Union Local No. 22 Health ("PFU")—filed this putative class action on behalf of themselves and

similarly situated third-party payors. Plaintiffs provide medical coverage, including prescription drug coverage, to their members and their members' dependents.[1] Defendants Ortho-McNeil-Jannsen Pharmaceuticals, Inc. and Sandoz, Inc., market and distribute the prescription-only, fentanyl transdermal system patch ("fentanyl patch"), which is manufactured by Defendant ALZA Corp.[2] The Plaintiffs' seek damages from Defendants for alleged violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), breach of express and implied warranties, and unjust enrichment arising from a February 2008 recall of all unsold production lots of the fentanyl patches with dosage rates of 25 mcg/hour and expiration dates through December 2009.[3] The lots were recalled because some patches in the lots contained cuts in the drug reservoir.[4]

In March 2009, Defendants filed a motion to dismiss under Rule 12(b)(1) and 12(b)(6). This Court dismissed the two warranty claims but left the UTPCPL and unjust enrichment claims intact.[5] The Court rejected Defendants' arguments that Plaintiffs lacked standing because they had not pleaded that their members received patches that were *actually* defective.[6] Plaintiffs' theory of the case is that the benefit funds that purchased the patches on behalf of their plan participants have been injured, not the participants themselves, because, as third-party payors,

---

[1] Compl. ¶¶ 1–2.

[2] Id. at ¶¶ 6–8.

[3] Id. at ¶¶ 33–50.

[4] Id. at ¶ 20.

[5] Doc. nos. 20 & 21.

[6] Mem. Op. at 6 [doc. no. 20].

they "have paid or will pay expenses related to the purchase of and reimbursement for supplies of 25 mcg/hour fentanyl patches [for their members] that were unusable, worthless, and had to be discarded."[7] The Court rejected the argument that the only injury from the recall arose from the sale of patches that were actually defective since the recall applied to all suspect production lots.[8]

After a scheduling conference with this Court, class certification discovery ensued: fact discovery on class certification was scheduled to close on December 15, 2010 and Plaintiffs' Motion for Class Certification is due in early January 2011. Defendants now move this Court to compel Plaintiffs to provide complete responses to their interrogatories and produce all requested documents. Defendants also seek an extension of all pending deadlines in this case by 120 days to account for delays in Plaintiffs' production and to provide additional time for depositions.

## II. The Discovery Dispute

Defendants assert that Plaintiffs' responses to their May 2010 interrogatories and production requests were both untimely and substantively insufficient. Defendants complain that despite substantial prodding by Defendants, neither named Plaintiff submitted any interrogatory responses until September 10; PFU did not produce documents until September 10; and AFSCME waited until November 23 to make their first production.[9] Defendants assert that the

---

[7] Compl. ¶¶ 21, 23.

[8] Mem. Op. at 6.

[9] Defs.' Mem. of Law in Supp. of Defs.' Motion to Compel Pls. to Produce Docs. Responsive to Defs.' First Set of Req. for Produc. and Provide Complete Answers to Defs.' First Set of Interrogs. ("Mem. in Supp. of Mot. to Compel") at 3–6.

Plaintiffs' responses to Defendants production requests and interrogatories issued on May 20 were due in late June 2010, but were delayed because of the death of one of the Plaintiffs' attorneys. Defendants were initially amenable to extensions in light of the circumstances. Despite Plaintiffs' continued promises that they would respond, they did not begin producing documents or responding to

interrogatory responses are deficient and that of the documents Plaintiffs ultimately produced, few mentioned the fentanyl patch at all, and none mentioned *defective* fentanyl patches or the 2008 recall underlying this action.

Defendants' Motion to Compel seeks interrogatory responses and documents in two primary categories: (1) documents Plaintiffs identified in their responses as discoverable, but failed to provide; and (2) "whole categories of other responsive documents and information."[10] Documents in the first category include:

- Spreadsheets of Plan Payments prepared by Plaintiffs' benefits administration companies in response to requests for information about fentanyl patches affected by the recall;[11]

- Documents relating to Defendants' requests for information about Plaintiffs' expenditures on the recalled patches;[12]

- Any non-privileged documents relating to communications between Plaintiffs and their Pharmacy Benefits Managers ("PBMs") regarding the recall, the patches, the defect or recalls in general;[13] and

- Documents on which Plaintiffs intend to rely for class certification.[14]

---

interrogatories until September. Mem. in Supp. of Mot. to Compel at 3–4.

Although Plaintiffs contend they produced additional sets of documents on October 28 and November 17, Defendants assert they received neither production until November 23. Pls.' Resp. to Defs.' Mot. to Compel at 3; Mem. in Supp. of Mot. to Compel at 5; Mem. in Supp. of Mot. to Extend at –7. The amount of ink the Parties spill bickering over the chronology of this particular production reflects the unacceptable discovery climate emerging in this action and which this Court admonishes the Parties to avoid hereafter.

[10] Mem. in Supp. of Mot. to Compel at 6–8.

[11] Id. at 5 & Ex. F ("Pls.' Resp. to Defs.' First Set of Interrogs." at 5).

[12] Id. at 5 & Pls.' Resp. to Defs.' First Set of Interrogs. at 7-8.

[13] Id. at 5 & Ex. F ("Pls.' Resp. to Defs.' First Set of Req. for Produc. of Docs." at 4).

[14] Id. at 5 & Pls.' Resp. to Defs.' First Set of Req. for Produc. of Docs. at 13.

The second category of documents encompasses virtually all of Defendants' fifty-five document requests, regardless of Plaintiffs' response to those questions. For example, Defendants move to compel categories of documents that Plaintiffs contend do not exist or, if they do exist, a non-party possesses them.[15] Defendants also seek to compel production of documents relating to the disposition of, and amounts paid for, fentanyl patches subject to the recall. Plaintiffs have objected to those and other similar requests to the extent Defendants are seeking the health care documents of individual plan participants, whose private health care information is protected by state and federal law,[16] and/or which seek data that their PBMs, not Plaintiffs, possess.[17] Plaintiffs contend that requiring them to conduct third party discovery of the PBMs and to produce private health information of plan participants is unduly burdensome.[18] They argue the PBMs cannot provide them with protected health information. Further, Plaintiffs assert that individual participants' health records are irrelevant to Plaintiffs' UTPCPL and unjust enrichment claims.[19]

Defendants also complain that they have been unable to schedule the deposition for one of the Plaintiff's 30(b)(6) witnesses because the only dates acceptable to Plaintiffs overlapped

---

[15] See Pls' Resp. to Defs.' First Set of Req. for Produc. of Docs. at 4–6 (responses to request nos. 5–11, 14–18).

[16] See, e.g., id. at 7–13 (responses to request nos. 25–43).

[17] Pls.' Resp. to Defs.' Mot. to Compel at 5.

[18] Id. at 6, 8.

[19] Id. at 7-8.

with scheduled depositions of Defendants' 30(b)(6) witnesses.[20] Plaintiffs then unilaterally cancelled the deposition of Defendants' witnesses, requiring that they be rescheduled for January.[21] Because of the delays in depositions and the delays and deficiencies of Plaintiffs' production, Defendants seek a four-month extension of all deadlines in this matter. Plaintiffs contend that no extensions are warranted based on deposition delays because Defendants are responsible for the delay, noticing their depositions on November 16 and unilaterally scheduling the deposition for a date just one week prior to the fact discovery deadline and on which the 30(b)(6) witness would be hospitalized.[22] Defendants, Plaintiffs assert, cannot complain about scheduling difficulties of their own making.[23]

Not to be outdone, Plaintiffs argue it is *Defendants* who have been unresponsive in discovery, failing to produce any documents regarding the recall, and producing instead only documents associated with unrelated personal injury litigation.[24] They assert that, despite Plaintiffs' attempts to confer with Defendants regarding their production, Defendants have "advised only that the requested production will be made by December 15, 2010."[25] Plaintiffs have not moved to compel Defendants' production.

---

[20] Mem. of Law. in Supp. of Mot. to Extend Deadline at 3.

[21] Defs.' Reply Mem. in Supp. of Mot. to Extend at 3.

[22] Pls.' Resp. to Defs.' Mot. to Extend at 3-4.

[23] Id. at 4.

[24] Pls.' Resp. to Defs.' Mot. to Compel at 2.

[25] Id.

**III. Discussion**

Except as provided in the accompanying Order, the Court declines to intervene in this dispute. This Court need not and will not sift through each interrogatory or request for production referenced in Defendants' extraordinarily broad motion to compel, not the least because Defendants have not identified *what* it is they specifically seek within each of those requests that Plaintiffs purportedly have in their possession, custody, or control but refuse to provide.[26] Defendants do not satisfy Local Rule 26.1(b)'s requirement that every discovery motion set forth the relevant parts of the interrogatory or request at issue by generally asserting that Plaintiffs' production was insufficient as to nearly every request, and by merely attaching the requests and responses.[27]

And the Court can find no basis to compel the documents encompassed in Defendants' second broad category of documents. Plaintiffs contend they have produced all plan utilization data they possess "subject to federal and Pennsylvania privilege and confidentiality restrictions."[28] And in response to many of Defendants' production requests, Plaintiffs represent that they simply do not possess documents. The Court cannot compel the production of

---

[26] See Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd., No. 97-cv-369BR1, 1998 WL 1742589, at *4 (E.D.N.C. Sept. 28, 1998) (noting the "court retains the discretion to determine that a party's motion to compel discovery is overly broad in scope," and denying motion to compel where "it is too broad and not sufficiently specific").

[27] See Andrews v. Super Fresh Food Mkts., No. 87-7815, 1988 WL 26496, at *1 (E.D. Pa. Mar. 14, 1988) ("The requirements of that rule are not satisfied by attaching defendant's interrogatories and plaintiffs' answers; the rule is specifically designed to eliminate the necessity of searching through voluminous documents for the relevant nuggets.").

[28] Pls.' Resp. to Defs.' Mot. to Compel at 6.

documents that do not exist.[29] To the extent that Defendants are able to present evidence that Plaintiffs' representations are incorrect, the Court will entertain an appropriate motion at the appropriate time.

Further, the Court will not compel the production of individual plan participants' protected health information that implicate state and federal privacy laws.[30] At least at this point in the litigation, such information does not appear reasonably calculated to lead to admissible evidence. Defendants barely address the privacy questions in the various Memoranda of Law although they previously acknowledged that such privacy issues may exist.[31] Though under regulations issued pursuant to the Health Insurance Portability and Accountability Act,[32] a qualified protective order may permit discovery of protected health information,[33] Defendants have not, however, demonstrated how or whether the stipulated protective order entered in this action[34] so qualifies. Moreover, as previously noted by this Court, Plaintiffs' alleged injury is not predicated on the disposition of the fentanyl patches by the non-party plan participants, and Defendants have done little to demonstrate why such individualized information is relevant here,

---

[29] Susquehanna Commercial Fin, Inc. v. Vascular Res., Inc., No. 09-2012, 2010 WL 4973317, at *6 (M.D. Pa. Dec. 1, 2010).

[30] Pls.' Resp. to Defs.' Mot. to Compel at 6–7 & n.6.

[31] See, e.g., Mem. in Supp. of Mot. to Compel, Ex. G (Letter from J. Lewers to F. Trammel, Oct. 29, 2010) at 4 (noting "to the extent any responsive document may contain personal patient information protected from disclosure under applicable law, such documentation can be produced in redacted form at least until that privacy issue can be resolved by the Court").

[32] 42 U.S.C. § 1320d et seq.

[33] See 45 C.F.R. §§ 164.512(e)(1)(ii), (iv) & (v).

[34] Doc. no. 30.

particularly at the class certification stage.  Finally, to the extent there is non-protected information available from the Pharmacy Benefits Managers, Defendants can issue third-party subpoenas subject to enforcement by this Court upon proper Motion.  Defendants have not demonstrated why this Court should order Plaintiffs to conduct third-party discovery on Defendants' behalf.

Accordingly, except as otherwise provided in the accompanying Order, the Court declines to compel documents in response to Defendants' Requests for Production numbered 5-11 and 13-55.  But the Court does find that Defendants are entitled to an Order compelling the documents promised by Plaintiffs in their responses to Defendants' interrogatories.

Finally, it is difficult to determine from the Parties' papers whether they attempted in good faith to meet and confer to resolve the pending discovery disputes.  In this District, "[d]iscovery disputes should not be referred to the court unless such serious differences exist between counsel that further efforts at negotiation are pointless or unless court intervention is necessary to resolve a disputed issue of law."[35]  Although Defendants' counsel certified pursuant to Local Rule 26.1(f) that she "made reasonable efforts, reflected by, among other things, the correspondence attached to this Motion, in order to contact counsel for plaintiffs . . . and to discuss Plaintiffs' failure to provide their responses to Defendants' [discovery] requests,"[36] the brief volley of letters between counsel regarding the sufficiency of Plaintiffs' production[37] does

---

[35] Crown Cork & Seal Co. v. Chemed Corp., 101 F.R.D. 105, 106–07 (E.D. Pa. 1984).

[36] Certification of Counsel [doc. no. 40-3].

[37] Defs.' Mem. in Supp. of Mot. to Dismiss, Exs. G & H.

not reflect reasonable efforts to resolve the disputes raised by that exchange.[38] The Court commends to the Parties <u>The Sedona Conference Cooperation Proclamation</u> and strongly suggests they take its call for "cooperative, collaborative, [and] transparent discovery"[39] seriously. The Proclamation advises that the parties cooperate "to identify and flesh out legitimate disputes and to provide courts with a factual foundation on which to make a decision should the parties be unable to reach a resolution absent court intervention."[40] Lacking that factual foundation here and without the benefit of the Parties' good efforts to winnow the disputes, the Court will not resolve the parties' differences. Instead, the Parties are expected to immediately meet and confer in good faith to cooperatively and independently resolve these disputes to the extent possible, and the Court provides ample time for the Parties to do so. If the Parties are unable to resolve these matters within the time allotted, the Court may require them to submit their discovery processes to a special master, with costs to be borne by the parties.

An appropriate Order follows.

---

[38] See <u>Pioneer Liemel Fabrics, Inc. v. Paul Rothman Indus., Ltd.</u>, No. 87-2581, 1988 WL 36343, at *1 (E.D. Pa. Apr. 18, 1988) ("A mere exchange of letters . . . is inadequate to satisfy Local Rule [26.1(f)].").

[39] The Sedona Conference®, <u>Cooperation Proclamation</u>, 10 Sedona Conf. J. 331, 331 (2009 Supp.), *available at* http://www.thesedonaconference.org/content/tsc_cooperation_proclamation.

[40] The Sedona Conference®, <u>The Case for Cooperation</u>, 10 Sedona Conf. J. 339, 350 (2009 Supp.)